possession he proceeds with the old action of trespass, which was formerly brought after an entry. All the recoupers which were formerly admissible in this action ought to be admitted now. There are many strong reasons for it. The recoverer in a modern ejectment must be either a freeholder or a termor. If a freeholder, he ought not to be placed in a better situation, as to the defendant's right of retainer, by the fictions of the court, than he was by the old law; and by the old law the improvements would be recouped in either of the alternative remedies which the plaintiff might elect to pursue. If he be a termor, he should not be placed in a better situation as to this particular by the awarding of the writ of possession than he was before the courts undertook to award that writ. By the old law the plaintiff recovered in ejectment the value of the whole term, but the term itself remained in the hands of the defendant. 3 Bl. Comm. 300. The defendant was safe as to his improvements, because they remained on the land which he retained during the term. But the courts undertook to give back the term specifically to the plaintiff and invented the writ of possession in the time of Henry VII. for that purpose. 3 Bl. Comm. 201; Runnington, Eject. "The writ of ejectment was now licked into the form of a real action" (Goodtitle v. Tombs, 3 Wils. 120), and the damages must have been of course, lowered from the full value of the whole term to the value of the profits generally (3 Wils. 121); and because this action now assumed the form and the effect of a real action, it must also have taken the character of a real action as to the defendant's right of retainer for improvements. Why did the courts of law award the writ of possession? Blackstone and Runnington say, to prevent the plaintiff from going into chancery for a restitution of the land. Now if the courts had not allowed the defendant recouper, he would have been driven into chancery for relief; but they would certainly never have invented a writ to relieve the plaintiff from going into chancery, and drive the defendant there unnecessarily.

CRANCH, Chief Judge (DUCKETT, Circuit Judge, absent). Before the fictitious action of ejectment was devised by the courts, and took the place of real actions, the true action of ejectment was brought only by the termor himself against the actual ejector, and the term itself was not recovered, but only damages to the value of the residue of the term yet to come; but the actual ejector still retained possession of the land; and by this means secured the benefit of all his improvements. When the fictitious action of ejectment was devised, it can scarcely be supposed that the court intended to deprive the defendant of any reasonable benefit which he had before in the old form of action; for "in fictione juris semper aequitas existit." Again, the fictitious action of ejectment was

a substitute for the assize of novel disseisin, the assize of mort d'ancestor, or for an actual entry, so far only as the assize or the entry, restored the disseizee to the actual possession of the land. It did not, like the assize, afford a remedy for the damages sustained by the disseizee by being kept out of possession, or by actual injury done to the land and premises. This defect arose from the circumstance that the parties were fictitious. It required the subsequent action of trespass for the mesne profits, in addition to the fictitious action of ejectment, to make the remedy equivalent to an assize. Where the disseizee regained his possession by reëntry, he was entitled to the action of trespass with a continuando for the mesne profits; and in the assize and in the action of trespass after reëntry, the defendant was permitted to show, in mitigation of damages, that he had sowed the land, or otherwise increased its value by improvements.

THE COURT thinks that the action of trespass for the mesne profits, after a recovery in the fictitious action of ejectment, is strictly analogous to the action of trespass with a continuando after an entry, and to that part of the remedy by assize which gave the defendant his damages, and is accompanied by the same equitable defence.

The opinion of THE COURT, therefore, is, that the improvements mentioned in the case agreed, may be given in evidence in mitigation of damages in the present action.

[See Cases Nos. 5,427, 5,429, and 5,430.]

---

## Case No. 5,429.

### GILL v. PATTON.

[1 Cranch, C. C. 143.] [1]

Circuit Court, District of Columbia. Nov. Term, 1803.

DEFENCES TO AN ACTION OF COVENANT FOR RENT.

To an action of covenant for rent, the defendant cannot plead that his lessor had not paid the ground-rent, according to his covenant.

Covenant for rent. The plea was that the plaintiff had not paid the ground-rent to Alexander, the original landlord, whereby the defendant was prevented from occupying the premises for fear of being distrained for that rent. General demurrer.

Mr. Taylor, for plaintiff, cited Dawson v. Myer, 1 Strange, 712; Monk v. Cooper, 2 Strange, 763; 2 Ld. Raym. 1477; Belfour v. Weston, 1 Term R. 310; Howlet v. Strickland, Cowp. 56.

Mr. Swann, on the same side. This covenant is of no effect, because it could not support an action. Patton could not recover till he was damnified. There has been no eviction. 1 Esp. N. P. 323. The covenant pleaded in bar is to keep the premises exonerated

from the payment of the rent due to Alexander.

Mr. Youngs, for defendant. Whatever happens by the act of God or of the lessor, to prevent the occupation of the lessee, is a good bar to an action for the rent. Enjoyment of the premises is the consideration of the rent. Eviction is not necessary. 4 Bac. Abr. 366. Patton was not obliged to stay until his property was seized for the rent due to Alexander. Patton's rent to Gill was £18, per annum; Gill's rent to Alexander was £135, per annum. Shep. Touch. 376. Fear of distress is as available as an actual distress. So that Gill has broken his covenant. The reason why one covenant cannot be set off against another, is because the damages may not be equal. But here the breaches are equal from the nature of the thing. Johnson v. Carre, 1 Lev. 152. The covenants are dependent. The intention of the whole deed is to be taken into view. This plea prevents circuity of action. As to 1 Term R. 310, the defendant enjoyed the land, although the house was burned. But here the defendant is wholly deprived of enjoyment.

C. Lee, same side. The plea is just and equitable. The two covenants made but one contract. The defendant's covenant is a condition or limitation of the covenant of the defendant. The defendant was to pay so long as he was permitted to enjoy. Shep. Touch. 114, tit. "Condition."

Mr. Swann, in reply. It might be either a plea of entry and eviction, or of dependent covenants. Gill's covenant is not a condition precedent. Patton's rent became due 1st September; Gill's on 4th September. Where the covenant goes to the destruction of the whole contract, it may be pleaded in bar. This plea goes to set up unliquidated damages against a covenant to pay a sum certain.

Judgment for the plaintiff on the demurrer, at June term, 1804.

[See Cases Nos. 5,427, 5,428, and 5,430.]

## Case No. 5,430.

### GILL v. PATTON.

[1 Cranch, C. C. 188.][1]

Circuit Court, District of Columbia. Nov. Term, 1804.

#### COVENANT FOR RENT—INTEREST.

In an action of covenant for rent, the landlord cannot recover interest.

Writ of inquiry, upon a judgment on demurrer in an action of covenant on a lease; breach, not paying rent.

C. Lee, for defendant, contended that as the landlord has a summary process to compel payment, he is not entitled to interest.

Mr. Youngs. The action is covenant and

---

[1] [Reported by Hon. William Cranch, Chief Judge.]

sounds in damages, and the jury alone can assess them.

THE COURT instructed the jury that they were as much bound to give interest on the arrears of rent as on any other debt by specialty; that it is in the power of the jury to refuse interest; and if they refuse, it is in the power of the court to grant a new trial.

Verdict for plaintiff, including interest.

A new trial was afterwards granted on the ground of misdirection of the jury by the court.

[See Cases Nos. 5,427–5,429.]

---

GILL (SAWYER v.). See Case No. 12,399.

---

## Case No. 5,431.

### GILL et al. v. STEBBINS et al.

[2 Paine, 417.][1]

Circuit Court, S. D. New York. June Term, 1828.

JURISDICTION DEPENDING ON SITUATION OF PARTIES TO THE RECORD — CONTRACTS—NECESSARY AVERMENTS IN DECLARATION — DEMURRER TO WHOLE DECLARATION WHICH IS ONLY PARTLY BAD.

1. Jurisdiction of the court is neither given nor ousted by the relative situation of the parties concerned in interest, but by the relative situation of the parties named on the record; and in all cases where jurisdiction depends on the party, it is the party named in the record.

2. Where a declaration on a special agreement, which was, that one G., who had been arrested in the city of New York, upon certain promissory notes made by a firm in the state of Alabama, in which he was a partner, to L. & B. of Boston, in consideration that plaintiffs would discharge him from that arrest, undertook and promised that he would forthwith proceed to Boston and call on L. & B., and offer such payment and satisfaction to them as he could accomplish, and in case his offer was not satisfactory to them, that he would surrender his person to any suit which L. & B. might institute against him within three weeks from the date of the agreement, and acknowledge service in the same, and the defendants, for the same consideration, bound themselves to the plaintiffs that the said G. should well and truly accomplish the conditions of said agreement, and in case of neglect on the part of the said G., within thirty days to perform, to enter bail for the said G.'s personal appearance at the suit of L. & B.; it was held on demurrer, that before G. could be charged with having violated his agreement by not surrendering himself, it must be averred that L. & B. had instituted a suit against him, and that if the declaration had contained an averment to that effect, plaintiffs would not be entitled to recover the amount of the notes without a further allegation as to their damnification.

3. In covenant, when several breaches are assigned, some of which are sufficient and others not, the defendant should only demur to such as are bad; and if he demur to the whole declaration, judgment must be given against him.

Demurrer to declaration. The declaration alleged that the plaintiffs [Theophilus A. Gill

---

[1] [Reported by Elijah Paine, Jr., Esq.]